POWELSLAND v. THE CITY OF TOLEDO ET AL.

*Municipal corporations—Ordinances—One subject expressed in title, when—Regulation and licensing of motor busses—Emergency measures—Franchise rights and repeal thereof—Toledo home rule charter—Referendum petitions—Failure of clerk to approve or certify—Remedies and collateral attack—Acts of de facto councilman—Legislative power not delegated, when.*

1. An ordinance entitled "An ordinance regulating the operation of motor busses, providing for certain annual payments and providing for the licensing thereof," the ordinance itself making full provision for issuing licenses, payment of fees, execution of bonds, revocation of licenses, regulation of operation, appeal, inspection of busses and penalty for violation of the provisions of the ordinance, contains no more than one subject which is clearly stated in the title.

2. An ordinance regulating the operation of motor busses, reciting that it is passed to meet an emergency due to the withdrawal of street cars from the streets of the city, and that it is subject to repeal at the will of the council, confers no franchise rights upon persons operating motor busses subject to the regulations of such ordinance, nor does it

confer any rights that may not be terminated by a repeal, either direct or by implication.

3. When a petition for the referendum of an ordinance is presented, the charter of the city of Toledo imposes upon the clerk of the council the duty of examining such petition to ascertain if it meets the requirements of the charter, and, after such examination, if he fails to certify the petition to the election authorities, a presumption arises that the petition does not comply with the requirements of the charter.

4. In an action attacking the validity of an ordinance, the failure or refusal of the clerk of council to certify to the election authorities a referendum petition upon such ordinance will not be inquired into, it being a collateral issue.

5. Upon a failure or refusal of the clerk of council to certify a referendum petition to the election authorities, the remedy of the petitioners is an action to compel such certification.

6. The right of a *de facto* member of a municipal council to the office cannot be raised collaterally in an attack upon an ordinance, the passage of which depended upon the vote of such *de facto* officer.

7. The city of Toledo, under its charter, has the right to license and regulate the operation of motor busses, and in so doing the council may delegate to appropriate departments of the city government the execution of the details provided by the licensing ordinance.

(Decided July 8, 1921.)

APPEAL: Court of Appeals for Lucas county.

*Mr. Irvin Austin* and *Mr. Wm. J. McLellan, Jr.,* for plaintiff.

*Mr. James S. Martin,* director of law, and *Mr. A. G. Duer,* for defendants.

CHITTENDEN, J.    This action is brought to restrain the city of Toledo and certain officers of the city from enforcing an ordinance of the city, No. 2083, regulating the operation of motor busses. The ordi-

nance is entitled "An ordinance regulating the operation of motor busses, providing for certain annual payments and providing for the licensing thereof," and was passed by the council of the city of Toledo on the 21st day of March, 1921, and provides for the licensing of motor busses and for the payment of a graduated license fee, depending upon the carrying capacity of the bus, execution of bonds, revocation of license, appeal, regulation of operation, inspection of busses and a penalty for violation of the provisions of the ordinance.

The plaintiff insists that the ordinance is invalid for numerous reasons assigned in argument. It is claimed that the ordinance is defective in that the title does not describe the full scope of the ordinance and that it contains more than one subject. We think this objection is not well taken. The ordinance covers but one subject, namely, the regulation of motor busses. The regulation of motor busses involves the issuing of licenses, the paying of a license fee and various other details.

The plaintiff insists that the enforcement of this ordinance will violate rights in the nature of a franchise obtained by him under an ordinance of the city of Toledo, known as ordinance No. 1700, under which he claims to be operating a motor bus. This ordinance was passed November 17, 1919. It recites that it is an ordinance regulating the operation of busses in the city of Toledo and that it is passed as an emergency law owing to the fact that The Toledo Railways & Light Company has ceased the operation of street cars in the city, and that thereby the city of Toledo and its inhabitants are deprived of all street car service. It further recites that because of the situation it is necessary to regulate the opera-

tion of motor busses in order to prevent accidents and injuries to person and property, and it states that it shall be in force from and after its passage and shall be subject to repeal or amendment at any time at the will of the council. We think it entirely clear that this ordinance No. 1700 does not confer any franchise right upon the plaintiff or any other persons operating motor busses in the city of Toledo subject to its regulations. Ordinance No. 1700 was strictly a police regulation, and nothing more. It conferred no rights that cannot be terminated by a repeal, either direct or by the passage of a subsequent ordinance inconsistent with and repugnant to it. Ordinance No. 2083, the enforcement of which is sought to be enjoined, is an ordinance which seeks to regulate in the city of Toledo the same business and the same class of vehicles as ordinance No. 1700. We think it, the later ordinance, clearly supersedes the earlier ordinance, and in so far as it is repugnant operates as a repeal.

It is claimed that the repeal of the former ordinance by implication would deprive the plaintiff of his right to a referendum upon the repealing ordinance. We do not, however, see that such result would follow. Whether the repealing ordinance affirmatively effects the repeal, or does so only by implication, it is subject to referendum, and, indeed, an attempt was made to submit ordinance No. 2083 to a referendum vote. One of the objections urged to the validity of the ordinance is that the clerk of the council failed to certify the referendum petition to the election authorities and have the same submitted to a referendum election. The evidence shows that a referendum petition, proper in form, was filed with the clerk, containing 17,400 names, and that the num-

ber of votes cast for mayor in the 1919 election was 44,398. It is claimed that there is no evidence in the record which shows that these figures are not correct and that under such circumstances the ordinance could not become a law until after a referendum election had been had. The evidence discloses that the clerk of council did not certify the petition to the election authorities, but that on May 13, 1921, he sent the following communication to the council of the city of Toledo:

"I have checked the referendum petitions on bus ordinance filed in this office April 20th, and find that there are over two thousand (2,000) short of the required fifteen per cent. (15%) of the votes cast for mayor in 1919, as provided in the charter. I have notified the committee on said petition of my finding."

This communication is criticised for the reason that it does not contain any explanation of the alleged shortage of names. It was not necessary that the clerk make any explanation other than to notify the council that the referendum petition was insufficient. Section 83 of the city charter requires that a referendum vote demanded by petition shall be submitted at a special election not later than thirty days after the clerk has certified to the election authorities that the petition for submission is in accordance with the requirements of the charter. This action clearly imposes upon the clerk the duty to examine the petitions with a view to ascertaining whether they meet the requirements of the charter, and it must be presumed that his failure to certify the petitions to the election authorities was because he found, upon such examination, that the petitions did not comply with the charter requirements.

Had the persons interested in securing a referendum vote not been content with the conclusion reached by the clerk their rights might have been, and, indeed, should have been, protected by an action to compel the certification of the petitions to the board of elections. The failure to certify cannot be made the subject of a collateral attack as herein attempted.

It is urged that the ordinance is not valid because not passed by the necessary number of votes. This objection is based upon the claim that one member of the council has forfeited his office by reason of taking employment with the county of Lucas. Section 28 of the charter provides:

"A member shall forfeit his office if he remove from the ward for which he was elected. Councilmen shall not hold any other public office or employment except that of a notary public or member of the State Militia."

It appears that one member of council at the time of the passage of this ordinance was employed as a driver of a truck for the sanitary engineering department of Lucas county. Section 28, above referred to, further provides that any member who shall cease to possess any of the qualifications herein required shall forthwith forfeit his office. The argument is made that by reason of taking employment from the county as a truck-driver, this member of the council forfeited his office and immediately ceased to be a member of the council. No action has ever been taken to declare the office forfeited. He was, in fact, at the time here under consideration, acting as a member of the council, representing the ward in which he lived, and participating fully in the deliberations of the council. Under the facts

shown we find that he was, at least, a *de facto* officer, and that the ordinance passed with his affirmative vote cannot be attacked in a collateral proceeding. 22 R. C. L., 588; 2 Dillon on Municipal Corporations, (5 ed.), Section 518; 4 Dillon on Municipal Corporations, (5 ed.), 1554, and *State* v. *Gardner,* 54 Ohio St., 24.

And a case which we deem to be specially applicable is that of *State, ex rel. Herron,* v. *Smith,* 44 Ohio St., 348.

The fact that the city of Toledo exists and functions under a special charter renders inapplicable many decisions of the supreme court defining the powers of municipalities and of city councils. By the adoption of the charter the inhabitants confer upon the city the power to license and regulate persons engaged in any lawful business, occupation, profession or trade, and to regulate and control the use, for whatever purposes, of the streets and other public places. The legislative power is vested in the council. The claim is made that the council has the sole power to license and that it cannot delegate this power, and that the ordinance in question does delegate that power to the director of public safety. The further criticism is made that it confers upon the director of public safety arbitrary and autocratic power which enables him to determine who shall operate busses and where they shall be operated; that he may discriminate unfairly against applicants for licenses and the ordinance provides no redress for the applicant by way of appeal from his decisions. The ordinance, we think, does not delegate the power to license. It requires all persons operating motor busses of the character described in the ordinance to obtain a license. The ordinance does

not appear to place any undue limit upon the licensing of motor busses. It provides in substance that one who desires to operate a motor bus for hire shall file his application for a license with the department of finance and that this application shall contain a map of the proposed route, showing the streets, alleys and public places upon which it is desired to operate the motor bus, together with a schedule of time and number of cars and vehicles to be operated. The department of finance is then required to submit this application to the director of public safety for his consideration. If he approves the same, the department of finance is required to issue a license, upon the payment of the fee provided by the ordinance. The director of public safety in considering such application may exclude bus service from certain streets or parts of streets, not arbitrarily, but where safety, sanitary or other reasons involving the public welfare suggest or require such action upon the part of the director of public safety. In such event the ordinance gives the applicant the privilege "of amending, modifying or altering his application so as to comply with the reasonable suggestions or requirements of the director of public safety, who shall have the power to approve the same in such amended, modified or altered form." We think the ordinance is very far from conferring upon the director of public safety unlimited and arbitrary power. His action is to be determined in the first place by his duty to conserve the safety of the public and its general welfare, and the ordinance specifically implies that his suggestions or requirements as to modification of the application shall be reasonable. An appeal is provided for from the action of the department of finance in refusing to issue a license, or

from an order or decision revoking any license which has been previously issued. The department of finance is the authority which issues or revokes the license. Its action in such respect is based largely upon the advice of the director of public safety, and we think that an appeal, as provided for, would reach almost any question that an aggrieved party might seek to have brought before the board of appeals. But, if not, the director of public safety is required to act in good faith, and in case of abuse of his powers, or of fraud, in the control of motor busses as given him under this ordinance, his action would be subject to review in the courts.

This court has had occasion to consider the principle herein involved and our conclusions are fully stated in *Raabe* v. *State,* 7 Ohio App., 119.

We are unable to find that the ordinance in question is invalid and the petition of the plaintiff will be dismissed.

                                   *Petition dismissed.*


RICHARDS and KINKADE, JJ., concur.